IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCIEN CURRIE, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>JOY CONE CO.,<br><br>Defendant. | 2:23-CV-00764-CCW |

# **OPINION**

Before the Court is Plaintiff Vincien Currie's Unopposed Motion for Preliminary Approval of Class Action Settlement between himself and Defendant Joy Cone Co. ECF No. 33. For the reasons that follow, the Motion will be GRANTED.

## I.   **Background**

On May 9, 2023, Mr. Currie filed a class action complaint asserting claims of negligence, negligence *per se*, breach of confidence, breach of implied contract, unjust enrichment, publicity given to private life, and declaratory judgment. ECF No. 1. The claims center around a data breach that occurred on February 27, 2023 at Joy Cone, Mr. Currie's former employer. *Id.* Mr. Currie alleges that cybercriminals gained unauthorized access to current and former Joy Cone employees' personally identifiable information, including names and social security numbers, that were stored on Joy Cone's network. *Id.* Mr. Currie further alleges that Joy Cone failed to maintain an adequate security system, failed to timely detect the data breach and failed to timely report and provide notice of the data breach to affected employees. *Id.*

On October 17, 2023,[1] following a mediation session with Bruce A. Friedman, Esq. of JAMS, the parties notified the Court that they had reached a settlement. *See* ECF No. 27. The settlement, if approved, would reimburse settlement class members as follows: up to $500 per person for "ordinary losses" (including up to four hours at $20 per hour for lost time for a total of $80); up to $4,500 per person for "extraordinary losses," such as identify theft; two years of credit monitoring and identify theft protection with $1 million in insurance; and, in the alternative to loss reimbursement and credit monitoring, a cash payment of $50 per person. ECF Nos. 34 at 2; 34-2. The aggregate cap on the claims is $300,000; if the value of the claims exceeds the cap, the claims will be reduced on a *pro rata* basis. *Id.* Under the agreement, Mr. Currie would receive a $2,500 service award and his counsel would receive an unspecified amount of up to $100,000 in attorneys' fees and up to $15,000 in costs, which would be paid separately by Joy Cone. ECF Nos. 34 at 9; 34-2.

On January 5, 2024, Mr. Currie filed the instant Motion, seeking approval of the settlement under Federal Rule of Civil Procedure 23. ECF No. 33. Joy Cone filed its Notice of Non-Opposition on January 9, 2024. ECF No. 36. On June 5, 2024, at the Court's direction in light of *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2001) and *Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023), the parties filed supplemental briefing on the issue of the putative settlement class members' standing. ECF Nos. 38, 39, 41.

## II.    Standard of Review

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).

---

[1] The parties decided to engage in early dispute resolution before Joy Cone responded to the Complaint. ECF Nos. 15, 24.

Furthermore, where the settlement would bind class members, "the court may approve [the settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Accordingly, "when a district court is presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under Rule 23(e)." *In re NFL Players Concussion Inj. Litig.* ("*NFL II*"), 775 F.3d 570, 581 (3d Cir. 2014) (cleaned up).

Courts in the Third Circuit generally follow a two-step process for approval of class settlements. First, "the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'" *In re NFL Players' Concussion Inj. Litig.* ("*NFL I*"), 961 F. Supp. 2d 708, 713–14 (E.D. Pa. 2014) (quoting *Manual for Complex Litigation (Fourth)* § 21.632 (2004) ("*MCL*")). At the preliminary approval stage,

> the bar to meet the "fair, reasonable and adequate" standard is lowered, and the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

*NFL I*, 961 F.Supp.2d at 714. According to the United States Court of Appeals for the Third Circuit, there is "an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*GMC*"), 55 F.3d 768, 785 (3d Cir. 1995).[2]

---

[2] At the final approval stage, a more demanding test applies, requiring the Court to examine the so-called *Girsh* factors:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a

Even though there is a "strong presumption" in favor of class settlements, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010), "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement," *NFL I*, 961 F. Supp. 2d at 714 (citation omitted). As such, "[j]udicial review must be exacting and thorough," *id.* (quoting *MCL* § 21.61), such that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason," *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-3905 (RMB/JS), 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011) (citation omitted). *See also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("[I]n cases such as this, where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, we require district courts to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." (quoting *GMC*, 55 F.3d at 805)).

If approval of the proposed class settlement is sought contemporaneously with certification of the class—that is, when the parties agree to a class-wide settlement "before the district court has issued a certification order under Rule 23(c)"—then "'the certification hearing and preliminary fairness evaluation can usually be combined.'" *NFL II*, 775 F.3d at 581–82 (quoting *MCL* § 21.632). When doing so,

> [t]he judge should make a *preliminary determination* that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

---

greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

4

*Id.* at 582–83 (quoting *MCL* § 21.632) (internal citation omitted).  Thus, a district court may provisionally certify a class under Rule 23(e) to facilitate notice to absent class members, fairly and efficiently resolve litigation, and preserve the resources of the court and the litigants, "allow[ing] the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims." *Id.* at 583.

Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," if such notice is justified by a showing that the Court will "will likely be able to:  (i) approve the proposal under Rule 23(e)(2);  and (ii) certify the class for purposes of judgment on the proposal."[3]  Rule 23(e)(2) does not "displace any factor," discussed above, "but rather . . . focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2009 amendment.

### III.  Analysis

#### A.  The Court Will Preliminarily Approve the Proposed Settlement

For preliminary approval of the proposed settlement, the Court begins with an analysis of the *GMC* factors, which, applied here, demonstrate that the settlement is entitled to a presumption

---

[3] Under Rule 23(e)(2), a Court may approve a settlement proposal that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate."  In evaluating the fairness, reasonableness, and adequacy, the Court must consider whether:

    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorneys' fees, including timing of payment;  and
        (iv) any agreement required to be identified under Rule 23(e)(3);  and
    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

of fairness. First, the settlement occurred only after a mediation with Bruce A. Friedman, Esq. of JAMS, which, according to Mr. Currie, involved "several rounds of offers and counteroffers," indicating that the settlement is the product of arms-length negotiations. *See* ECF No. 34 at 17; *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-905(MF), 09-1248(MF), 09-4587(MF), 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2021) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." (cleaned up)). Second, formal discovery did not occur in this case due to the timing of the settlement. But prior to the mediation, Mr. Currie's counsel requested and received information from Joy Cone regarding the size of the class, how the data breach occurred, the scope of the data breach, Joy Cone's response to the data breach, and security changes Joy Cone undertook as a result of the data breach. ECF No. 34 at 17–18; 34-1 ¶ 10. Although some information was exchanged, because the Court cannot state that significant discovery has occurred, this factor is neutral. Third, counsel for Mr. Currie, Raina C. Borrelli, Esq.[4], has significant experience in complex class actions, including in data breach class actions. *See generally* ECF No. 34-1 ¶¶ 29–33. The final *GMC* factor—the subset of class members who have objected to the settlement—cannot yet be analyzed. On balance, the *GMC* factors favor preliminary approval, and a presumption of fairness therefore attaches.

The Court further concludes that at this time the settlement is free from any "obvious deficiencies" that indicate that the settlement is not "fair, reasonable, and adequate" under Rule 23(e)(2). Initially, there does not appear to be any unduly preferential treatment of the named plaintiff, Mr. Currie, who is to receive a $2,500 service award. ECF No. 34 at 9. That amount is in line with service awards approved or preliminarily approved in comparable cases. *See, e.g.*,

---

[4] The Court notes that Attorney Borrelli was previously with the law firm Turke & Strauss LLP which appears to have become two firms since the filing of the Motion. Attorney Borrelli is now a partner at Strauss Borrelli.

*Corra v. ACTS Ret. Servs., Inc.*, Civ. A. No. 22-2917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024) (granting preliminary approval in data breach case providing $2,500 service award to named plaintiffs). However, turning to attorneys' fees, Mr. Currie has not advised how much he is seeking in attorneys' fees. Instead, he states he intends to seek up to $100,000 for his attorney and up to $15,000 for costs. If Mr. Currie seeks the entire $100,000 in attorneys' fees, it would represent 33% of the settlement, which has been held to be "on the higher end in databreach [sic] cases." *Holden v. Guardian Analytics, Inc.*, Civ. A. No. 2:230-cv-2115, 2024 WL 2845392, at *11–12 (D.N.J. June 5, 2024) ("[I]n class action settlements of databreach [sic] cases, awards have generally been between 20% to 30% of the settlement."). Further, the Settlement Agreement contains a clear-sailing clause,[5] whereby Joy Cone has agreed not to contest Mr. Currie's fee petition up to $100,000. ECF No. 34-2 at 14. The Court must fully scrutinize this side agreement prior to any finding that the forthcoming request for attorneys' fees is reasonable. *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th at 725 ("Though not an automatic bar to settlement approval, such [clear sailing provision] terms still 'deserve careful scrutiny' when calculating a reasonable fee award."). Accordingly, at this time, without the benefit of an actual amount sought and more information regarding the clear sailing provision, the Court cannot determine whether the settlement of the attorneys' fees is reasonable. However, because preliminary approval is a lower standard, *NFL I*, 961 F. Supp. 2d at 714, the Court finds that the potential deficiency here regarding the attorneys' fees is not an "obvious deficiency" which would bar preliminary approval. Instead, whether the attorneys' fees are reasonable will be addressed at the final approval stage.

Finally, the Court concludes that the settlement appears to fall within the range of possible approval. In sum, there being "no obvious deficiencies" and the settlement "fall[ing] within the

---

[5] The Third Circuit has explained that clear sailing provisions amount to "agreement[s] by a settling party not to oppose a fee application up to a certain amount." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 725 (3d Cir. 2023).

7

range of reason," *Zimmerman*, 2011 WL 65912, at *2, the Court finds for the purposes of preliminary approval that the proposed settlement appears to be "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

### B.      The Court Will Provisionally Certify the Rule 23 Class

Turning to provisional certification, Mr. Currie seeks to represent a Rule 23(b)(3) class of approximately 3,098 "Persons residing in the United States whose PII was compromised in the Joy Cone Data Security Incident that occurred on or around February 27, 2023." ECF No. 33-1 at 2. For the following reasons, the Court finds provisional certification appropriate under Rules 23(a) and 23(b)(3).

Before turning to the express elements of Rule 23(a), the Court will address the implicit requirements of Rule 23 in the Third Circuit. First, the Court notes that the proposed class definition suggests that each class member could have standing. ECF No. 41 at 8 ("each Settlement Class Member, like Plaintiff, is a victim of the Data Breach and had their PII accessed and stolen by cybercriminals and published on the dark web…[t]o receive compensation under the Settlement, the Settlement Class Members must first confirm they are part of the Settlement Class by certifying that they received notice of the data breach from Defendant informing them that their PII was impacted."); *see TransUnion*, 594 U.S. at 431 ("Every class member must have Article III standing in order to recover individual damages."); *Huber*, 84 F. 4th at 155 ("[T]he possibility that some unnamed class members lack standing may prevent certification under Federal Rule of Civil Procedure 23."); *Drazen v. Pinto*, 41 F.4th 1354, 1360 (11th Cir. 2022), *reh'g en banc granted, opinion vacated,* 61 F.4th 1297 (11th Cir. 2023), and *on reh'g en banc*, 74 F.4th 1336 (11th Cir. 2023) (holding that, in light of *TransUnion*, "when a class seeks certification for the purpose of a damages settlement under Rule 23(e), the class definition must be limited to those

individuals who have Article III standing. If every plaintiff within the class definition in the class action in *TransUnion* had to have Article III standing to recover damages after trial, logically so too must be the case with a court-approved class action settlement").[6] Next, the Court additionally notes that ascertainability does not appear to be an issue. ECF No. 41 at 8; *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162–63 (3d Cir. 2015) (citing *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).

As to the explicit requirements of Rule 23(a), Mr. Currie must make a preliminary showing of numerosity, commonality, typicality, and that the representatives of the class will "fairly and adequately protect the interests of the class." Mr. Currie has no trouble establishing numerosity—that the class is so large that joinder would be impracticable—given that his proposed class consists of approximately 3,098 members. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (more than forty members generally sufficient for numerosity). Nor do commonality and typicality pose a significant obstacle at this stage. For commonality, Mr. Currie must show that there are "questions of law and fact common to the class," Fed. R. Civ. P. 23(a)(2), which is the case here because all members share a claim arising out of the same event—the February 27, 2023 data breach at Joy Cone. *See Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) ("Commonality does not require perfect identity of questions of law or fact among all class members." (quoting *Wal-Mart Stores, Inc.*, 564 U.S. 338, 359 (2011)). And for typicality, Mr. Currie may show a "strong similarity" between claims and defenses for himself and the class, which he does because all class members are proceeding on the same legal theory with respect to

---

[6] Both parties urge the Court to preliminarily approve the settlement class without inquiring into the putative settlement class members' standing. ECF Nos. 39, 41. One of the primary arguments is that the procedural postures of *TransUnion* and *Huber* differ from the instant action. While factually correct, because the parties seek preliminary, and ultimately final, approval under Rule 23, Courts must consider whether the unnamed class members' have or potentially lack standing in the certification analysis. *Huber*, 84 F. 4th 132 (3d Cir. 2023); *Drazen*, 41. F.4th 1354 (holding *TransUnion* requires an examination of unnamed class members' standing in settlement actions).

the February 27, 2023 data breach. *See In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (internal quotations omitted). Finally, at this stage, there do not appear to be any conflicts of interest and counsel appear to be competent to represent the interests of the class. *See In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012) ("According to the Third Circuit, Rule 23(a)(4) adequacy is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interests." (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d. Cir. 2007)). Accordingly, Mr. Currie has made a preliminary showing that he can satisfy the requirements of a class action found in Rule 23(a).

With respect to Rule 23(b)(3), Mr. Currie must make a preliminary showing that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Although similar to the commonality requirement of Rule 23(a), the predominance inquiry is more demanding and a plaintiff must show that "the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127–28 (3d Cir. 2018) (internal citation and quotation omitted). Here, that standard is satisfied given that a trial would turn on common evidence regarding, for example, the data breach and Joy Cone's network systems. As to superiority, that requirement is met here because resolving the claims of the 3,098 class members in a single case is far fairer and more efficient than doing so in 3,098 individual actions. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004) ("The superiority requirement asks the court to balance, in terms of fairness and efficiency, the

merits of a class action against those of alternative available methods of adjudication." (internal quotation marks omitted)).

Because Mr. Currie has made a preliminary showing that he can satisfy the requirements of Rule 23(a) and 23(b)(3), the Court will provisionally certify a class of the 3,098 "Persons residing in the United States whose PII was compromised in the Joy Cone Data Security Incident that occurred on or around February 27, 2023." ECF No. 33-1 at 2.

### C. The Proposed Notice is Reasonable

Finally, the Court considers the parties' plan for the dissemination of notice. Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Where, as here, the class is to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23, such notice

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* After reviewing the materials submitted by Mr. Currie, the Court finds that Mr. Currie's notice plan complies with Rule 23 and will order that notice be given consistent with the notice plan set forth in the settlement agreement.

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Mr. Currie's Motion and enter an order: (1) preliminarily approving the settlement; (2) provisionally certifying the class for settlement purposes only; (3) directing notice to be given consistent with Mr. Currie's notice plan; (4)

11

appointing Raina C. Borrelli as class counsel;  (5) adopting the opt-out and objections procedures set forth in the settlement;  and (6) setting a fairness hearing and associated deadlines.

DATED this 25th day of June, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record