## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VINCIEN CURRIE**<br>1550 Madison Road, Apartment 9<br>Hermitage, Pennsylvania 45206<br><br>Individually and on behalf of all others similarly situated,<br><br>                   Plaintiff,<br><br>v.<br><br>**JOY CONE CO.**<br>3435 Lamor Road<br>Hermitage, Pennsylvania 16148<br><br>                   Defendant. | Case No. 2:23-cv-00764-CCW<br><br>Judge Christy C. Wiegand |

## PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM OF LAW FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND <u>PAYMENT OF A SERVICE AWARD TO THE CLASS REPRESENTATIVE</u>

## I.      INTRODUCTION

Plaintiff Vincien Currie ("Plaintiff"), individually and on behalf of the Settlement Class, respectfully moves the Court for an award of reasonable attorneys' fees, costs, and expenses, and approval of a service award, in connection with the class action settlement ("Settlement Agreement" or "S.A.") entered into with Defendant Joy Cone Co. ("Defendant" or "Joy Cone") on January 4, 2024. *See* 34-2 ("S.A."). Notably, the Settlement Agreement was the product of a full-day mediation on October 11, 2023, with Bruce A. Friedman, Esq. of JAMS. S.A. ¶ I (1). Thereafter, the Court granted preliminary approval on June 25, 2024. ECF 42, 43.

Class Counsel vigorously and efficiently prosecuted this action and was able to achieve an excellent result for the Settlement Class in a timely manner. Declaration of Raina C. Borrelli ("Borrelli Decl."), ¶ 2. If finally approved by the Court, the Settlement will provide significant benefits to the Settlement Class of approximately 3,098 individuals which is defined as: "All Persons residing in the United States whose PII was compromised in the Joy Cone Data Security Incident that occurred on or around February 27, 2023."[1] ECF 34, at 12; S.A. ¶ 1.32.

The Settlement provides significant monetary relief to Class Members who submit a valid claim up to a very high $300,000.00 aggregate cap. *Id*. ¶ 3.4. ***First***, Settlement Class Members can claim up to $500.00 per person for documented out-of-pocket expenses (e.g., professional fees, fees for credit repair services, credit monitoring costs). *Id*. ¶ 3.2(a). ***Second***, Settlement Class Members can claim up to $80.00 per person for lost time—up to four (4) hours at $20.00 per hour, subject to the $500.00 cap for out-of-pocket expenses. *Id*. ***Third***, Settlement Class Members can claim up to $4,500.00 per person for extraordinary losses (e.g., fraud or identity theft). *Id*. ¶ 3.2(b).

---

[1] Unless otherwise indicated, the capitalized terms have the same definition as set forth in the Settlement Agreement.

***Fourth***, Settlement Class Members can obtain two years of credit monitoring and identity theft protection with $1 million in insurance through Experian. *Id*. ¶ 3.2(c). ***Fifth***, as an alternative, Settlement Class Members can receive a $50.00 cash payment in lieu of claims for ordinary losses, lost time, extraordinary losses, and credit monitoring. *Id*. ¶ 3.3.

Finally, the Settlement provides injunctive relief insofar as Joy Cone is required to take certain reasonable steps to further secure its systems and environments and will prepare a confidential declaration describing its information security improvements since the Data Security Incident and estimating the annual cost of those improvements *Id*. ¶ 3.5. Moreover, Joy Cone will pay all notice and administration costs ***separate and apart*** from other settlement benefits. *Id*. ¶ 4.1. By every measure, the relief obtained here is substantial.

Critically, the Parties did not discuss or negotiate fees or service awards until they agreed on the terms benefiting the Class. Borrelli Decl. ¶ 4. In so doing, the Parties avoided conflict with the Class's interests, thereby fulfilling their responsibilities to the Class. *Id*. As contemplated by the Settlement Agreement, Class Counsel respectfully requests an award of attorneys' fees of one hundred thousand dollars and no/100 ($100,000.00) and reasonable costs of $9,676.49. S.A. ¶ 8.2. Additionally, Class Counsel respectfully requests a Service Award of $2,500 to Plaintiff Vincien Currie. *See id*. ¶ 8.1. Notably, Joy Cone has agreed to pay the requested attorneys' fees and service award ***separate and apart*** from other settlement benefits. *Id*. ¶¶ 8.1–8.2.

As explained in detail below, the requested attorneys' fees, costs, and service award are reasonable under both (1) the lodestar, and (2) percentage of the fund approaches. Indeed, Class Counsel took substantial risks in litigating this case, expended considerable time and effort, and successfully obtained significant monetary and non-monetary relief for the Settlement Class. After all, the claims alleged in the complaint implicated complex issues of data breach litigation—which

is a rapidly developing area of law. *See* ECF. 1. The costs sought were reasonable and necessary for the prosecution of this action. Borrelli Decl. ¶ 24. And the requested Service Award is modest, customary, and fully warranted given Plaintiff's substantial efforts and dedication to serving as an effective Class Representative. *Id*. ¶ 25. Notably, Class Counsel provided the Settlement Class with information—explaining the requested attorneys' fees, costs, and Service Award—in both the Short Form Notice and Long Form Notice. *See* ECF 34–2, Exs. A, B. And as of September 6, 2024, zero Settlement Class Members have objected to the Settlement, attorneys' fees, costs, or the service award. Borrelli Decl. ¶ 12. And as of September 6, 2024, zero Settlement Class Members have opted-out of the Settlement. *Id*. For these reasons, the Court should grant this Motion.

## II.     Statement of Facts

### a.     Background

Joy Cone is a Pennsylvania Corporation that produces ice cream cones. ECF 1 ("Compl."), ¶¶ 15, 19. Plaintiff is a former employee of Joy Cone. *Id*. ¶ 26. On February 27, 2023, Joy Cone experienced a Data Security Incident that exposed the PII of Plaintiff and the Settlement Class. *Id*. ¶ 1. The exposed PII included names and Social Security numbers. *Id*. ¶ 5. Thereafter, on May 9, 2023, Plaintiff filed a class action complaint asserting claims of negligence, negligence *per se*, breach of confidence, breach of implied contract, unjust enrichment, publicity given to private life, and declaratory judgment. *See generally id*. However, before filing, Class Counsel conducted extensive pre-suit discovery to determine all publicly available details about the cause, scope, and result of the Data Security Incident, and the damages suffered by the Plaintiff and the Settlement Class. ECF 34–1, ¶ 4.

### b.   Procedural History

Plaintiff filed his Complaint on May 9, 2023. ECF 1. After agreeing to multiple extensions of time for Joy Cone to respond to the Complaint and meeting and conferring on Defendant's intended motion to dismiss, the Parties met and conferred about early resolution. ECF 15. The Parties subsequently moved to stay all case deadlines pending a mediation scheduled for October 11, 2023, which the court granted. ECF 24, 25.

Prior to mediation, Class Counsel requested, and Joy Cone produced, key information about the size and composition of the Settlement Class, how the Data Security Incident occurred, Joy Cone's response to the Data Security Incident, and security changes Joy Cone undertook as a result of the Data Security Incident. ECF 34–1, ¶ 10. Furthermore, Class Counsel prepared a detailed mediation statement outlining Plaintiff's positions on the legal and factual claims at issue and Plaintiff's positions on the framework for resolution. *Id.* ¶ 11.

On October 11, 2023, the parties engaged in a full-day mediation with Bruce Friedman, Esq. of JAMS. *Id.* ¶ 14. After many rounds of offers and counteroffers, the Parties eventually reached agreement on the material terms of the Settlement. *Id.* ¶ 17. In the weeks following the mediation, the Parties continued negotiations and drafted the specific terms of the Settlement Agreement and the associated exhibits. ECF 34-1, ¶ 18. On January 5, 2024, the Settlement Agreement and the associated exhibits were finalized and signed. *Id.* ¶ 19. And the Parties negotiated and agreed upon a Claims Administrator: Atticus Administration, LLC. *Id.*

On January 5, 2024, Plaintiff moved for Preliminary Approval of the Class Action Settlement. ECF 33. On January 9, 2024, Joy Cone responded to Plaintiff's Motion and indicated its non-opposition and consent to Plaintiff's Motion for Preliminary Approval. ECF 36.

Following additional briefing requested by the Court on standing (ECF 28, 29, 41), on June 25, 2024, the Court granted Preliminary Approval of the Class Action Settlement. ECF 42, 43. And the Court entered an order (1) preliminarily approving the settlement; (2) provisionally certifying the class for settlement purposes only; (3) directing notice to be given consistent with Mr. Currie's notice plan; (4) appointing Raina C. Borrelli of Strauss Borrelli PLLC as class counsel; (5) adopting the opt-out and objections procedures set forth in the settlement; and (6) setting a fairness hearing and associated deadlines. *Id*.

Pursuant to the Notice plain, the Court-appointed Claims Administrator, Atticus Administration, LLC ("Atticus"), mailed 3,060 notices on July 25, 2024. Borrelli Decl. ¶ 10. As of September 6, 2024, two-hundred and twelve (212) notices were returned as undeliverable. *Id*. ¶ 11. Thereafter, Atticus re-mailed one-hundred and twenty-nine (129) notices after finding updated addresses. *Id*. As of September 6, 2024, ninety-six (96) claims have been submitted, zero (0) objections have been filed, and zero (0) requests for exclusion have been filed. *Id*. ¶ 12.

### III.    Settlement Terms

#### a.    The Settlement Class

Pursuant to Federal Rule of Civil Procedure 23, the Court provisionally certified, for settlement purposes only, the following Settlement Class: "Persons residing in the United States whose PII was compromised in the Joy Cone Data Security Incident that occurred on or around February 27, 2023." ECF 41, ¶ 1.  Excluded from the Settlement Class are: (i) Joy Cone Co.; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of

initiating, causing, aiding, or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge. S.A. ¶ 1.32.

### b. Settlement Benefits

Class Counsel successfully obtained substantial monetary and non-monetary relief for the Settlement Class. S.A. ¶¶ 3.1–3.5. In terms of monetary relief, the Settlement provides Class Members who submit a valid claim up to a very high $300,000.00 aggregate cap. *Id*. ¶ 3.4. ***First***, Settlement Class Members can claim up to $500.00 per person for documented out-of-pocket expenses (e.g., professional fees, fees for credit repair services, credit monitoring costs). *Id*. ¶ 3.2(a). ***Second***, Settlement Class Members can claim up to $80.00 per person for lost time—up to four (4) hours at $20.00 per hour, subject to the $500.00 cap for out-of-pocket expenses. *Id*. ***Third***, Settlement Class Members can claim up to $4,500.00 per person for extraordinary losses (e.g., fraud or identity theft). *Id*. ¶ 3.2(b). ***Fourth***, Settlement Class Members can obtain two years of credit monitoring and identity theft protection with $1 million in insurance through Experian. *Id*. ¶ 3.2(c). ***Fifth***, as an alternative, Settlement Class Members can receive a $50.00 cash payment in lieu of claims for ordinary losses, lost time, extraordinary losses, and credit monitoring. *Id*. ¶ 3.3.

Finally, the Settlement provides injunctive relief insofar as Joy Cone is required to take certain reasonable steps to further secure its systems and environments and will prepare a confidential declaration describing its information security improvements since the Data Security Incident and estimating the annual cost of those improvements. *Id*. ¶ 3.5. Moreover, Joy Cone will pay all notice and administration costs ***separate and apart*** from other settlement benefits. *Id*. ¶ 4.1. Taken together, the relief obtained for the Settlement Class is substantial. In exchange for such relief, all Settlement Class Members who do not exclude themselves from the Settlement will

release their claims against Joy Cone arising from the Data Security Incident. S.A. ¶¶ 1.27–1.28, 13.1–13.7.

### c. Attorneys' Fees, Costs, and the Service Award,

Pursuant to the Settlement Agreement, Class Counsel respectfully requests an award of attorneys' fees of $100,000.00 and reasonable costs of $9,676.49. S.A. ¶ 8.2. Additionally, Class Counsel respectfully requests a Service Award of $2,500 to Plaintiff Vincien Currie. *Id*. ¶ 8.1. Notably, Joy Cone has agreed to pay the requested attorneys' fees and service award ***separate and apart*** from other settlement benefits. *Id*. ¶¶ 8.1–8.2.

### d. Notice Program and Claims Administration

Pursuant to the Settlement Agreement, the Court appointed Atticus Administration, LLC as Claims Administrator. S.A. ¶ 4.2; ECF 43. Moreover, the Court approved, pursuant to Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, the form, substance, and requirements of the Notice Program as defined and described in the Settlement Agreement, including the Short Form Notice, Long Form Notice, and Claim Form. ECF 43; 34-2, Exs. A, B, C. Notably, Joy Cone has agreed to pay for the costs of Claims Administration ***separate and apart*** from other settlement benefits. *Id*. ¶¶ 4.1, 8.1–8.2.

The Notice Program commenced on July 25, 2024, and Atticus mailed 3,060 notices. Borrelli Decl. ¶ 10. Additionally, Atticus established the Settlement Website at "https://www.joyconedatasettlement.com." *Id*. As of September 6, 2024, two-hundred and twelve (212) notices were returned as undeliverable. *Id*. ¶ 11. Thereafter, Atticus re-mailed one-hundred and twenty-nine (129) notices after finding updated addresses. *Id*. As of September 6, 2024, ninety-six (96) claims have been submitted, zero (0) objections have been filed, and zero (0) requests for

exclusion have been filed. *Id.* ¶ 12. Pursuant to the Court's Order, both the exclusion and objection deadlines are September 23, 2024. ECF 44, ¶¶ 6–7.

### e. Final Approval Hearing

Pursuant to Rule 23(e)(2), the Court set the hearing addressing final approval of the settlement (the "Fairness Hearing") for December 5, 2024, at 1:00 p.m. via telephonic conference. ECF 43, ¶ 10. Pursuant to the Court's Order, Class Counsel will file a Motion for Final Approval of the Settlement on or before November 4, 2024. *Id.* ¶ 11.

## IV. Legal Standard

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorney[s'] fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In the Third Circuit, "there are two methods of evaluating requests for attorneys' fees: the percent-of-recovery method and the lodestar method." *In re Philips Recalled CPAP*, No. 21-1230, 2024 U.S. Dist. LEXIS 75306, at *109-10 (W.D. Pa. Apr. 25, 2024) (citing *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998)). Moreover, courts consider "1) how the amount awarded stacks up against the benefit given to the class, using either the amounts paid or the sums promised; and 2) whether side agreements between class counsel and the defendant suggest an unreasonable attorney's fee award." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 718-19 (3d Cir. 2023).

## V. Argument

Pursuant to the Settlement Agreement, Class Counsel respectfully requests an award of attorneys' fees of $100,000.00 and reasonable costs of $9,676.49. S.A. ¶ 8.2. Additionally, Class Counsel respectfully requests a Service Award of $2,500 to Plaintiff Vincien Currie. *See id.* ¶ 8.1.

Critically, when the fee award is to be paid separately by the defendant rather than as a reduction to a common fund—which is the case here—the "Court's fiduciary role in overseeing the award is greatly reduced, because there is no potential conflict of interest between attorneys and class members." *Rossi v. Proctor & Gamble Co.*, No. 11-cv-07238, 2013 U.S. Dist. LEXIS 143180, at *26-27 (D.N.J. Oct. 3, 2013); *see also Haas v. Burlington Cty.*, No. 08-cv-01102, 2019 U.S. Dist. LEXIS 16071, at *23 (D.N.J. Jan. 31, 2019) ("[T]he amount of attorneys' fees was negotiated as a separate aspect of the settlement agreement, which further supports reasonableness.").

The Court should approve Plaintiffs' motion for an award of attorneys' fees, costs, and service award for four key reasons. ***First***, under the lodestar method, the requested attorneys' fee is reasonable. ***Second***, under the percentage-of-recovery method, the requested attorneys' fee is likewise reasonable. ***Third***, the Class Counsel's requested costs are reasonable and should be reimbursed. ***Fourth***, the requested service award is warranted and should be approved.

### a.   Under the Lodestar Method, the Attorneys' Fee Is Reasonable.

The lodestar method is based on "the number of hours reasonably expended" to determine "an adequate fee irrespective of the monetary value of the final relief achieved for the class*." In re Philips Recalled CPAP*, No. 21-1230, 2024 U.S. Dist. LEXIS 75306, at *110 (W.D. Pa. Apr. 25, 2024) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)). Here, the court "multiplies the number of hours the class counsel worked on a case by a reasonable hourly billing rate for such services[.]" *In re Diet Drugs Antitrust Litig.*, 582 F.3d 524, 540 (3d Cir. 2009) (citations and internal quotations omitted). In the Third Circuit, the lodestar method "is more commonly applied in statutory fee-shifting cases" or "where the nature of the recovery does not allow the determination of the settlement's value necessary for

application of the percentage-of-recovery method." *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *30 (E.D. Pa. Sep. 23, 2019) (citations omitted). Here, the requested attorneys' fee is reasonable because the (1) hourly rate, (2) lodestar, and (3) lodestar multiplier are all reasonable.

### i.   The hourly rate is reasonable.

Class Counsel's hourly rate is reasonable. To calculate a firm's hourly rate, "district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). Moreover, "district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Id*. (citing *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998)). Here, Class Counsel's current hourly rates range from $150 to $700. Borrelli Decl. ¶ 17; *see Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001) ("When attorney's fees are awarded, the current market rate must be used."). After accounting for the hours worked per person, Class Counsel's blended hourly rate is $487.84. Borrelli Decl. ¶ 19.

Generally, when determining whether an hourly rate is reasonable, courts reference the "hourly rate . . . prevailing in that forum." *Pocono Mt. Sch. Dist. v. T.D.*, No. 22-1787, 2023 U.S. App. LEXIS 9162, at *10 (3d Cir. Apr. 18, 2023). In the Western District of Pennsylvania, courts have held that hourly rates ranging from $200 to $767.25 per hour are reasonable for attorneys. *See e.g., Kengerski v. Cty. of Allegheny*, No. 2:17-cv-1048, 2023 U.S. Dist. LEXIS 93055, at *5 (W.D. Pa. May 26, 2023) (approving rates from $200 to $700 per hour); *Geness v. Pennsylvania*, No. 16-876, 2020 U.S. Dist. LEXIS 134431, at *41 (W.D. Pa. July 29, 2020) (approving a rate of $600 per hour); *In re Philips Recalled CPAP*, No. 21-1230, 2024 U.S. Dist. LEXIS 75306, at *118 (W.D. Pa. Apr. 25, 2024) (approving a blended rate of $767.25 which was calculated by "by taking

the total lodestar divided by the total hours"). Here, Class Counsel's blended hourly rate is $487.84. Borrelli Decl. ¶ 19. Thus, Class Counsel's hourly rate is reasonable and within the range of those accepted in this forum.

However, there are exceptions to this "forum rate rule." *Pocono Mt. Sch. Dist. v. T.D.*, No. 22-1787, 2023 U.S. App. LEXIS 9162, at *10 (3d Cir. Apr. 18, 2023). Relevant here, is the "special expertise" exception whereby "[t]he court may award attorneys' fees 'based on prevailing rates in the community in which the parties' attorneys practice'" when "the need for the special expertise of counsel from a distant district is shown[.]" *Id*. (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005). Here, Class Counsel has special expertise in complex litigation including data breach class actions. Borrelli Decl. ¶ 13. Critically, courts recognize that cases like this are "complex [and] in a risky field of litigation because data breach class [actions] are uncertain and class certification is rare." *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sep. 23, 2019); *see also Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676-JDW, 2024 U.S. Dist. LEXIS 43851, at *15 (E.D. Pa. Mar. 13, 2024) (noting that data breach class actions are "complex" and part of "an underdeveloped legal discipline"). Thus, the "special expertise" exception applies—and the prevailing rates in Class Counsel's home forum are relevant.

Class Counsel is based in Chicago, Illinois where hourly rates can far exceed $1,000 per hour. *See e.g., Reindl v. Astrue*, No. 09 CV 2695, 2012 U.S. Dist. LEXIS 143943, at *8 (N.D. Ill. Oct. 4, 2012) (awarding a rate of $1,164.51 per hour); *Evans v. Saul*, No. 16 C 4962, 2019 U.S. Dist. LEXIS 242142, at *6 (N.D. Ill. July 12, 2019) (awarding a rate of $1,493.21 per hour); *Kirby v. Berryhill*, No. 14 CV 5936, 2017 U.S. Dist. LEXIS 195517, at *2 (N.D. Ill. Nov. 29, 2017)

(awarding a rate of $1,612.28 per hour). Thus, under the "special expertise" exception, Class Counsel's blended rate of $487.84 is plainly reasonable.

### ii.      The lodestar is reasonable.

Here, Class Counsel's lodestar totals $70,102.50. Borrelli Decl. ¶ 18. Class Counsel has invested 143.70 hours litigating this class action, including, *inter alia*: investigating Plaintiffs' injuries and claims, drafting the complaint, preparing and reviewing motions for extension of time, drafting term sheets, drafting a mediation brief, preparing for and attending mediation, negotiating the terms of the settlement agreement, drafting the settlement agreement, preparing settlement exhibits (short form notice, long form notice, and claim form), drafting the motion for preliminary approval and the supporting memorandum, drafting the brief on Article III standing, working with and overseeing the Claims Administrator regarding notice and claims administration, and preparing this motion and memorandum. *Id*. ¶ 16. Notably, the Third Circuit explained that it is "a long-held principle in our Court that '[a] party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application.'" *Pocono Mt. Sch. Dist. v. T.D.*, No. 22-1787, 2023 U.S. App. LEXIS 9162, at *14 (3d Cir. Apr. 18, 2023) (quoting *Planned Parenthood v. AG*, 297 F.3d 253, 268 (3d Cir. 2002)). Thus, the total of 143.70 hours is a reasonable expenditure of time by Class Counsel.

### iii.      The lodestar multiplier is reasonable.

The requested fee award reflects a reasonable lodestar multiplier—which is calculated by dividing the requested fee award by the lodestar. *In re Philips Recalled CPAP*, No. 21-1230, 2024 U.S. Dist. LEXIS 75306, at *118 (W.D. Pa. Apr. 25, 2024) (citing *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)). For example, a requested fee award of $94.4 million and a lodestar of $65,829,309.60 equates to a lodestar multiplier of

"1.43." *Id*. Critically, "[t]he Third Circuit has recognized that lodestar multipliers from **one to four** are frequently awarded in class cases." *Id*. (emphasis added) (internal quotation marks omitted) (quoting *In Re Prudential*, 148 F.3d at 341 (3d Cir. 1998)); *see also In re Nat'l Football League Players' Concussion Injury Litig*., 814 F. App'x 678, 683 n.8 (3d Cir. 2020) (explaining that a "multiplier of 2.96 [is] within the acceptable range in this Circuit").

Still, multipliers beyond the "one to four" range are often approved in the Third Circuit and "are not completely unusual." *Frederick v. Range Res.-Appalachia, LLC*, No. 08-288 Erie, 2011 U.S. Dist. LEXIS 27350, at *35 (W.D. Pa. Mar. 17, 2011) (approving a multiplier of 5.95); *see also In re Rite Aid Corp. Secs. Litig*., 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (approving a multiplier of 6.96). Here, the requested fee award equates to a lodestar multiplier of 1.43.[2] Borrelli Decl. ¶ 20. Thus, Class Counsel's lodestar multiplier is well within the range of multipliers accepted within the Third Circuit—and as such, Class Counsel's lodestar multiplier is reasonable.

### b. Under the Percentage-of-Recovery Method, the Attorneys' Fee Is Reasonable.

The Third Circuit has "suggested it is sensible for a court to use a second method of fee approval to cross-check its initial fee calculation." *In re Wawa, Inc. Data Sec. Litig*., 85 F.4th 712, 722 n.18 (3d Cir. 2023) (quoting *In re Rite Aid Corp*., 396 F.3d at 300). However, the percentage-of-recovery method does not neatly apply to claims-based settlements (such as this one here). *See e.g.*, *Gray v. BMW of N. Am., LLC*, No. 13-cv-3417, 2017 U.S. Dist. LEXIS 135593, at *14 (D.N.J. Aug. 24, 2017) ("Percentage-of-recovery is normally applied in cases involving a 'common fund" as opposed to a 'claims-made' settlement, which usually calls for application of the lodestar

---

[2] Notably, Class Counsel's lodestar multiplier is likely to **decrease** as the settlement process progresses. Borrelli Decl. ¶ 21. After all, Class Counsel will dedicate more time and effort to, *inter alia*, overseeing claims administration, preparing the motion and memorandum for final approval, and attending the final approval hearing. *Id*.

method."). Thus, for claims-based settlements, "the nature of the settlement evades the precise evaluation needed for the percentage of recovery." *Id.* (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)). In *In re Wawa*, the Third Circuit explained that courts should consider both "the funds made available to class members [and] the amount actually claimed during the claims process[.]" 85 F.4th at 725. Here, an application of the percentage-of-recovery method nonetheless reaffirms the reasonableness of the requested fee award.

Notably, "fee awards generally range from 19% to 45% of the settlement fund[.]" *In re Philips Recalled CPAP*, No. 21-1230, 2024 U.S. Dist. LEXIS 75306, at *115 (W.D. Pa. Apr. 25, 2024) (citing *Sorace v. Wells Fargo Bank, N.A.*, No. 20-4318, 2024 U.S. Dist. LEXIS 26340, at *32 (E.D. Pa. Feb. 15, 2024)). Here, a conservative value of the settlement is the $300,000 cap on monetary settlement benefits, which does not take into account the cost of notice and claims administration or the value of the data security changes implemented by Joy Cone in response to the Data Incident. Borrelli Decl. ¶ 5. As such, the requested fee award equates to a percentage of 33.33% which is well within the acceptable range. Thus, the fee award is reasonable and should be approved.

In the Third Circuit, courts use the *Gunter* and *Prudential* factors to assess the reasonableness of fee awards. *In re Philips Recalled CPAP*, No. 21-1230, 2024 U.S. Dist. LEXIS 75306, at *110 (W.D. Pa. Apr. 25, 2024) (citing *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Product Liability Litigation*, 582 F.3d 524, 541 (3d Cir. 2009)). The *Gunter* factors are:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the

litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Id*. And the *Prudential* factors are:

> (1) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (3) any "innovative" terms of settlement.

*Id*. Critically, "[t]hese factors need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest." *Id*. (internal quotation marks omitted).

Finally, as noted *supra*, the Third Circuit requires that courts consider "1) how the amount awarded stacks up against the benefit given to the class, using **either** the amounts paid **or** the sums promised; and 2) whether side agreements between class counsel and the defendant suggest an unreasonable attorney's fee award." *In re Wawa*, 85 F.4th at 718-19. On balance, these factors reaffirm that the requested fee award is reasonable.

### i.     Fund size and number of beneficiaries.

The first *Gunter* factor is "the size of the fund created and the number of persons benefitted." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. To do so, the court "must begin by making a reasonable estimate of the settlement value." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000). When calculating the value of a settlement, courts usually include monetary relief, non-monetary relief (e.g., credit monitoring and investments to defendant's data security practices), attorneys' fees and costs, and the costs of claims administration. *See e.g., Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *33–34 (E.D. Pa. Sep. 23, 2019) (calculating the settlement value by combining the maximum available monetary relief, the value of credit monitoring, the value of injunctive relief, the costs of administration and class notice,

attorneys' fees, and service awards); *Corra v. ACTS Ret. Servs.*, No. 22-2917, 2024 U.S. Dist. LEXIS 500, at *34 (E.D. Pa. Jan. 2, 2024) (same).

For example, in *Jackson v. Wells Fargo Bank, N.A.*, the court calculated the settlement value by combining monetary relief, attorneys' fees and expenses, and the costs of settlement administration because "[t]hese are sums that class members would otherwise be responsible for and therefore are part of the total benefit to the class." 136 F. Supp. 3d 687, 713 (W.D. Pa. 2015). Here, the Settlement provides relief to 3,098 Class Members. ECF 42, at 8. And the Settlement provides up to $300,000 in monetary relief, $100,000 in attorneys' fees, up to $15,000 in costs, injunctive relief (i.e., remedial data security measures), and two years of credit monitoring and identity theft protection with $1 million in insurance through Experian which has a rough valuation of $700,000.[3] S.A. ¶¶ 3.2–3.7.  Additionally, Joy Cone has committed to implementing data security improvements at its own cost that will benefit the Settlement Class moving forward. As such, the estimated value of the settlement is, conservatively, the $300,000 in benefits for the Settlement Class, and more than $1,000,000 if each of these categories of relief is taken into account. Thus, this factor weighs toward approval.

### ii.   Absence of substantial objections.

The second *Gunter* factor is "the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel." *In re Philips*, 2024 U.S.

---

[3] To calculate the total value of credit monitoring services, courts multiple (1) the class size by (2) an estimated per-most cost of such services, and (3) the number of months of provided. *Fulton-Green*, 2019 U.S. Dist. LEXIS 164375, at *33 (explaining that the monitoring services had retail values ranging from $9.99 to $19.99 per month). Here, the multiplying the class size of 3,098 by an estimated per-month cost of $9.99 by the duration of 24 months yields a valuation of $742,776.48. Borrelli Decl. ¶ 6.

Dist. LEXIS 75306, at *110. As of September 6, 2024, zero (0) Settlement Class Members have objected to the settlement.[4] Borrelli Decl. ¶ 12. Thus, this factor weighs toward approval.

###          iii.          Skill and efficiency of the attorneys.

The third *Gunter* factor is "the skill and efficiency of the attorneys involved." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. Here, Class Counsel has expertise in data breach class actions and has successfully obtained substantial and timely relief for the Settlement Class. Borrelli Decl. ¶¶ 2, 13. Indeed, in the data breach case *Corra v. ACTS Ret. Servs.*, the court—while analyzing the third *Gunter* factor—held that Raina C. Borrelli had "litigated and settled numerous class actions, including data breach class actions" and was "capable class counsel[.]" No. 22-2917, 2024 U.S. Dist. LEXIS 500, at *37 (E.D. Pa. Jan. 2, 2024). Thus, this factor weighs toward approval.

###          iv.          Complexity and duration.

The fourth *Gunter* factor is "the complexity and duration of the litigation." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. As explained *supra*, courts recognize that cases like this are "complex [and] in a risky field of litigation because data breach class [actions] are uncertain and class certification is rare." *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sep. 23, 2019); *see also Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676-JDW, 2024 U.S. Dist. LEXIS 43851, at *15 (E.D. Pa. Mar. 13, 2024) (noting that data breach class actions are "complex" and part of "an underdeveloped legal discipline"). Moreover, Class Counsel has invested 143.70 hours into the litigation thus far. Borrelli Decl. ¶ 16. And as explained *supra*, Class Counsel will dedicate more time and effort to, *inter alia*, overseeing claims administration,

---

[4] Plaintiffs will provide the Court with information about any additional opt outs or objections when they move for final approval of the Settlement ahead of the final fairness hearing.

preparing the motion and memorandum for final approval, and attending the final approval hearing. *Id*. ¶ 21. Thus, this factor weighs toward approval.

### v. Risk of nonpayment.

The fifth *Gunter* factor is "the risk of nonpayment." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. Notably, "[a]ny contingency fee includes a risk of non-payment." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003). Here, Class Counsel pursued this case on an entirely contingency basis. Borrelli Decl. ¶ 2. And Class Counsel has invested a lodestar of $70,102.50 and costs of $9,676.49 in pursuit of this case. *Id*. ¶¶ 18, 23. This is significant because "[t]aking such a risk on behalf of the class lends credence to the fee request . . . and thus this factor supports approval." *Corra v. ACTS Ret. Servs*., No. 22-2917, 2024 U.S. Dist. LEXIS 500, at *39 (E.D. Pa. Jan. 2, 2024) (citing *Fulton-Green*, 2019 U.S. Dist. LEXIS 164375, at *35). Thus, this factor weighs toward approval.

### vi. Amount of time devoted.

The sixth *Gunter* factor is "the amount of time devoted to the case by counsel." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. As explained *supra*, Class Counsel has invested 143.70 hours into the litigation thus far. Borrelli Decl. ¶ 16. And Class Counsel will dedicate more time and effort to this litigation. *Id*. ¶ 21. Thus, this factor weighs toward approval.

### vii. Awards in similar cases.

The seventh *Gunter* factor is "awards in similar cases." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. For example, in the data breach case *Fulton-Green*, the court approved a fee request of $300,000 even though the class size was only 937 class members. 2019 U.S. Dist. LEXIS 164375, at *13, 33 (E.D. Pa. Sep. 23, 2019). Similarly, in *Corra*, the court noted that an award of $250,000 was "consistent with, if not **lower than**, attorneys' fee awards in similar

cases[.]" 2024 U.S. Dist. LEXIS 500, at *39 (emphasis added). Thus, Class Counsel's fee request is significantly smaller than awards in similar cases—and this factor weighs toward approval.

### viii.    Value of benefits attributable to class counsel.

The first *Prudential* factor is "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. Here, there is no indication that any other groups, such as government agencies conducting investigations, have contributed to this case and Settlement. Borrelli Decl. ¶ 8. Rather, all benefits provided by the Settlement are attributable to Class Counsel's expertise and efforts. *Id*. In such circumstances, "[t]his factor weighs toward approval." *Corra*, 2024 U.S. Dist. LEXIS 500, at *40 (E.D. Pa. Jan. 2, 2024).

### ix.    Alternative private contingent fee.

The second *Prudential* factor is "the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. Generally, contingency fees "range between 30% to 40%." *Corra*, 2024 U.S. Dist. LEXIS 500, at *40 (E.D. Pa. Jan. 2, 2024) (quoting *Hall v. Accolade, Inc*., No. 17-3423, 2020 U.S. Dist. LEXIS 52632, at *30 (E.D. Pa. Mar. 24, 2020)). Here, the requested fee award is, conservatively, 33% of the settlement value—which is well within the acceptable range. Borrelli Decl. ¶ 7. Thus, this factor weighs toward approval.

### x.    Innovative terms.

The third *Prudential* factor is "any 'innovative' terms of settlement." *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *110. Here, the Settlement provides two years of credit monitoring and identity theft protection with $1 million in insurance through Experian. S.A. ¶ 3.2(c). Such

non-monetary relief "address[es] the injury most commonly suffered in data-breach cases like this one: anxiety caused by the tangible risk of identity theft or financial fraud." *Corra*, 2024 U.S. Dist. LEXIS 500, at *40–41 (E.D. Pa. Jan. 2, 2024). To be sure, "credit monitoring is generally a common term" in data breach settlements. *Id*. Nonetheless, in the broader class action context, such tailored relief is "innovative" and weighs toward approval.

xi.       **The "clear sailing provision" is permissible and non-collusive.**

In its order granting preliminary approval, this Court highlighted the clear sailing provision in the Settlement Agreement whereby "Joy Cone agree[d] not to object to an application by Settlement Class Counsel requesting the Court award attorneys' fees[.]" ECF 41, at 7; ECF 34-2, ¶ 3.7. To be sure, such provisions "deserve careful scrutiny[.]" *In re Wawa*, 85 F.4th at 725. However, the Third Circuit is clear that such provisions are "not an automatic bar to settlement approval[.]" *Id*. After all, "[t]he concern with a clear sailing provision is collusion[.]" *Id*. (quoting *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 447 (3d Cir. 2016)).

Here, the clear sailing provision is permissible for three key reasons. ***First***, the Settlement Agreement was the product of a full-day mediation with Bruce A. Friedman, Esq. of JAMS. S.A. ¶¶ 14, 17. To be sure, the "presence of a neutral mediator . . . is not on its own dispositive[.]" *In re Wawa*, 85 F.4th at 726 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011)). Nonetheless, such oversight is relevant and "weigh[s] in favor of a finding of non-collusiveness[.]" *Id*. (quoting *In re Bluetooth*, 654 F.3d at 948)). ***Second***, "[f]rom the start, the parties agreed that they would not negotiate attorneys' fees or service awards until after they reached an agreement on the core terms of the settlement[.]" ECF 34-1, ¶ 16. ***Third***, the Settlement Agreement was the product of "fundamentally adversarial" negotiations and "[t]he parties reached an agreement only after assessing several rounds of offers and counteroffers." *Id*. ¶¶ 17, 20. Taken

together, these factors show that Joy Cone's agreement "not to object" was non-collusive and permissible.

### c.   Class Counsel's Costs Are Reasonable and Should Be Reimbursed.

Pursuant to the prosecution of this case, Class Counsel incurred reasonable costs of $9,676.49. Borrelli Decl. ¶ 23. Class Counsel incurred these costs for filing fees, service fees, mediation fees, legal research costs, and postage. *Id*. Within this district, courts routinely approve such costs as reasonable. *See e.g., Nguyen v. Educ. Comput. Sys., Inc*., No. 2:22-cv-1743, 2024 U.S. Dist. LEXIS 140023, at *12 (W.D. Pa. Aug. 7, 2024) (approving "$10,403.04 in unreimbursed case-related expenses" related to "filing, copying, mediation and case administration"); *In re Philips*, No. 21-1230, 2024 U.S. Dist. LEXIS 75306, at *118 (W.D. Pa. Apr. 25, 2024) (approving "$571,374.38 in expenses"); *Calhoun v. Invention Submission Corp*., Civil Action No. 18-1022, 2023 U.S. Dist. LEXIS 41172, at *20-21 (W.D. Pa. Mar. 8, 2023) (approving $150,000.00 for "costs associated with mediation, copying fees, expert fees, computerized research and travel"). Thus, Class Counsel's costs are reasonable and should be reimbursed.

### d.   The Service Award Is Reasonable and Should Be Approved.

Here, Plaintiff Vincien Currie was dedicated to his role as Class Representative and actively engaged in this action by, *inter alia*, assisting in the investigation of the case, producing relevant documents, reviewing and approving pleadings, reviewing the Settlement documents, and answering counsel's many questions. Borrelli Decl. ¶ 26. Thus, Class Counsel requests an award of $2,500 (which aligns with the service awards in similar data breach class action settlements). *See e.g.*, *Weisenberger v. Ameritas Mut. Holding Co*., No. 4:21-CV-3156, 2024 U.S. Dist. LEXIS 149359, at *14 (D. Neb. Aug. 21, 2024) (approving a service award of $2,500); *Beasley v. Ttec Servs. Corp*., Civil Action No. 22-cv-00097, 2024 U.S. Dist. LEXIS 29759, at *20 (D. Colo. Feb.

21, 2024) (same); *Hapka v. Carecentrix, Inc.*, No. 2:16-cv-02372, 2018 U.S. Dist. LEXIS 68186, at *2 (D. Kan. Feb. 15, 2018) (same).

Moreover, within this district, courts routinely approve larger service awards. *See e.g., Nguyen v. Educ. Comput. Sys., Inc.*, No. 2:22-cv-1743, 2024 U.S. Dist. LEXIS 140023, at *14 (W.D. Pa. Aug. 7, 2024) (approving a $10,000 service award); *In re Philips*, 2024 U.S. Dist. LEXIS 75306, at *161-62 (W.D. Pa. Apr. 25, 2024) (approving a service award of $5,000 per person because "the amount of $5,000 . . . is fair and reasonable [and] is consistent with similar awards granted in this Circuit"); *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *33 (W.D. Pa. Oct. 22, 2019) (approving a service award of $5,000 while noting that $5,000 is "consistent [with], if not lower, than awards regularly provided"). Thus, the requested award of $2,500 is modest, reasonable, and should be approved.

**VI.    Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion for attorney's fees, costs, and a service award.

Dated: September 9, 2024          By:  */s/ Raina C. Borrelli*
                                        Raina C. Borrelli (*pro hac vice*)
                                        STRAUSS BORRELLI PLLC
                                        One Magnificent Mile
                                        980 N Michigan Avenue, Suite 1610
                                        Chicago IL, 60611
                                        Telephone: (872) 263-1100
                                        Facsimile: (872) 263-1109
                                        raina@straussborrelli.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Raina C. Borrelli, hereby certify that on September 9, 2024, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record, below, via the ECF system.

DATED this 9th day of September, 2024.

STRAUSS BORRELLI PLLC

By:  */s/ Raina C. Borrelli*
 Raina C. Borrelli
 raina@straussborrelli.com
 STRAUSS BORRELLI PLLC
 One Magnificent Mile
 980 N Michigan Avenue, Suite 1610
 Chicago IL, 60611
 Telephone: (872) 263-1100
 Facsimile: (872) 263-1109